861 So.2d 351 (2003)
Clarice Woolbright BAKER, Appellant,
v.
Norman Kenneth BAKER, Appellee.
No. 2002-CA-01747-COA.
Court of Appeals of Mississippi.
September 30, 2003.
Rehearing Denied December 16, 2003.
*352 Michael J. Malouf, Jackson, Melissa Ann Malouf, Attorneys for Appellant.
John W. Chapman, Brandon, Attorney for Appellee.
Before KING, P.J., BRIDGES and LEE, JJ.
LEE, J., for the Court.

PROCEDURAL HISTORY AND FACTS
¶ 1. Clarice Baker and Norman Baker were divorced by the Rankin County Chancery Court in 1998 after thirty-two years of marriage. For the first fourteen years of the marriage, Clarice was the homemaker, staying at home to raise the children, who are now emancipated. Clarice later became employed as a school teacher, although Norman was the primary breadwinner during their marriage. Norman retired from IBM in 1993, receiving a lump sum separation payment, and began drawing periodic retirement benefits commencing in February 1998.
¶ 2. The chancellor granted the Bakers a divorce on the grounds of irreconcilable differences, divided their assets, and awarded lump sum alimony to Clarice. Clarice was awarded part of the marital estate, but denied periodic alimony. Clarice then appealed the chancellor's decision to this Court, arguing primarily that the chancellor erred in failing to consider Norman's IBM retirement benefits. This Court reversed and remanded for the chancellor to either treat Norman's IBM retirement benefit as a marital asset subject to a revised equitable distribution or to leave the retirement account with Norman but award periodic alimony to Clarice. See Baker v. Baker, 807 So.2d 476 (Miss. Ct.App.2001). On remand the chancellor awarded Clarice periodic alimony.
¶ 3. Clarice now appeals again to this Court, asserting the following issues: (1) the chancellor erred in failing to allow Clarice fifty percent of Norman's IBM retirement benefit; (2) the chancellor erred in withholding twenty-eight percent for taxes on the IBM retirement benefit when making a distribution of the marital assets; (3) the chancellor erred in considering Clarice's PERS retirement account when evaluating the percentage of Norman's retirement benefit to be assessed to her; and (4) the chancellor erred in failing to award a higher amount of periodic alimony to her. Finding these issues to be without merit, we affirm.

STANDARD OF REVIEW
¶ 4. When reviewing the decisions of a chancellor, this Court applies a limited abuse of discretion standard of review. McNeil v. Hester, 753 So.2d 1057(¶ 21) (Miss.2000). The findings of the chancellor will not be disturbed "unless the chancellor was manifestly wrong, clearly erroneous, or applied the wrong legal standard." Id.

DISCUSSION OF ISSUES

I. DID THE CHANCELLOR ERR IN FAILING TO ALLOT CLARICE FIFTY PERCENT OF NORMAN'S IBM RETIREMENT BENEFIT?
¶ 5. In her first issue, Clarice argues that the chancellor should have given her an equitable share of Norman's IBM retirement benefits. Clarice states that rather than allowing her thirty percent of the retirement benefit the chancellor should have divided the retirement benefit on a fifty-fifty basis as were the other assets. Clarice also contends that the retirement benefits were marital property accumulated during the marriage and that, because she also made significant alternative *353 contributions to the home, she had a right to receive half of the benefits.
¶ 6. In Baker I, this Court remanded the cause to the chancellor with instructions to either adjust the equitable division of marital assets or to determine an amount of periodic alimony to be payed to Clarice. The chancellor chose not to assess any portion of the retirement benefits, but instead used the monthly amount of the benefits to determine an appropriate award of periodic alimony. According to the findings of fact and conclusions of law, the chancellor chose the specific amount of periodic alimony based on the monthly retirement benefit for two reasons: first, the retirement benefit figures were based on money Norman paid into the account from his personal salary; and second, Clarice will receive a retirement income from PERS, none of which was distributed to Norman.
¶ 7. As it was within the chancellor's discretion to make a division of the retirement benefit or to award periodic alimony to bring a measure of fairness to the situation, we cannot find that the chancellor abused his discretion in awarding Clarice periodic alimony. This issue is without merit.
II. DID THE CHANCELLOR ERR IN WITHHOLDING TWENTY-EIGHT PERCENT OF THE RETIREMENT BENEFIT FOR TAXES WHEN MAKING A DISTRIBUTION OF THE MARITAL ASSETS?
¶ 8. In her next issue, Clarice argues that the chancellor erred in discounting the monthly retirement benefits by twenty-eight percent for taxes and then granting her thirty percent of that amount for periodic alimony. However, the chancellor used only the monthly retirement amounts in determining an appropriate amount of periodic alimony. This was not a distribution of marital assets, and we fail to see how the chancellor abused his discretion in using the after tax value of the benefit to determine an appropriate amount for periodic alimony.
III. DID THE CHANCELLOR ERR IN CONSIDERING CLARICE'S PERS RETIREMENT ACCOUNT WHEN EVALUATING THE PERCENTAGE OF NORMAN'S RETIREMENT BENEFIT TO BE ASSESSED TO HER?
¶ 9. In her third issue, Clarice states that because the chancellor had previously taken her retirement account into consideration he erred in reducing her share of the IBM retirement benefits by the value of her retirement account. However, the chancellor stated that he took into account Clarice's retirement account in order to determine an appropriate amount of periodic alimony not as a basis for distributing the IBM retirement benefit as a marital asset. As we fail to see how the chancellor abused his discretion, we find this issue to be without merit.
IV. DID THE CHANCELLOR ERR IN FAILING TO AWARD A HIGHER AMOUNT OF PERIODIC ALIMONY TO CLARICE?
¶ 10. In her last issue, Clarice contends that the amount granted to her as periodic alimony, $379.94, was in error due to the discrepancy in the incomes of Norman and Clarice. Alimony awards are within the discretion of the chancellor and this Court will not reverse an award on appeal absent manifest error or abuse of discretion. McEachern v. McEachern, 605 So.2d 809, 815 (Miss.1992). "In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion." Armstrong v. Armstrong, 618 So.2d 1278, 1280 *354 (Miss.1993); Smith v. Smith, 607 So.2d 122, 126 (Miss.1992). According to Baker I, Norman's monthly income was cited as $5,217 (this figure includes his monthly IBM retirement benefit) and Clarice's was $2,478. Clarice also received half of the marital assets, including a payment of $25,704.62 by Norman to make the distribution equal. Considering this, Clarice's present employment, and her retirement, we cannot find that the amount of periodic alimony was so oppressive, unjust, or grossly inadequate as to evidence an abuse of discretion by the chancellor. We find this issue to be without merit.
¶ 11. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.