# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02726-SCT

*PAUL EUGENE PHILLIPS*

*v.*

*DEBRA KAY BROWN PHILLIPS*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/4/2003 |
| TRIAL JUDGE: | HON. EDWIN H. ROBERTS, JR. |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DAVID L. WALKER |
| ATTORNEY FOR APPELLEE: | JOE RENDER LOVELADY |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED-12/02/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     This case is an appeal from a chancellor's grant of divorce and distribution of marital assets with the sole issue bearing on whether the distribution was equitable.  The chancellor awarded the wife fifty percent of the husband's retirement benefits which accumulated during the marriage but prior to separation. We are called upon to consider whether the chancellor's ruling was equitable under the principles of ***Ferguson v. Ferguson,*** 639 So.2d 921, 928 (Miss. 1994).  Finding no reversible error, we affirm  the trial court's judgment.

**FACTS AND PROCEEDINGS BELOW**

¶2. Paul Eugene Phillips and Debra Kay Brown Phillips were married on May 31, 1992, in Adams County, Mississippi. While no children were produced or adopted as a result of this union, Debra had a child from a previous relationship which lived with the couple. Paul and Debra continuously lived together as husband and wife in Panola County until they separated on or about June 1, 2001. Around this time, Debra changed her domicile to Lafayette County, Mississippi, where she currently resides and Paul maintained his residence in Panola County. Since their separation, Paul and Debra have not cohabited.

¶3. On September 11, 2002, Paul filed for divorce in the Chancery Court of Lafayette County, Mississippi alleging willful, continued, and obstinate desertion pursuant to Miss. Code Ann. § 93-5-1 (Rev. 2004). Debra answered and counterclaimed and alleged habitual cruel and inhuman treatment pursuant to Miss. Code Ann. § 93-5-1 (Rev. 2004). Thereafter, Paul and Debra voluntarily consented to a divorce on the grounds of irreconcilable differences pursuant to Miss. Code Ann. § 93-5-2 (Rev. 2004), and permitted the chancellor to determine distribution of the marital assets.

¶4. At the time the divorce action was filed, Paul was gainfully employed as a police office with the Batesville Police Department where he worked for a number of years prior to his resignation on October 21, 2003. Paul had a retirement account through the Public Employee' Retirement System of Mississippi (PERS) funded through his contributions for approximately 15.25 years while working for various law enforcement agencies. While with the police department, Paul earned approximately $1,575.00 per month. At the time of trial, the balance of Paul's PERS account was approximately $34,000.00, to which Debra had not made any

monetary contributions. Due to a child support order which arose from a previous marriage, at the time this divorce action was filed, Paul paid approximately $300.00 per month in support.

¶5. At the time of filing for divorce, Debra was gainfully employed as a receptionist at the Baptist Memorial Hospital-North Mississippi where she had retirement benefits through the hospital. While at the hospital, Debra earned approximately $1,000.00 per month. Throughout the marriage, it is uncontradicted that Debra maintained steady employment with various employers. At trial, Paul testified that Debra performed about 70% of the house work during their marriage, while he did about 30%.

¶6. During their marriage Paul and Debra maintained a joint checking account, from which they paid joint bills and expenses, including Paul's monthly child support obligation. According to their trial testimony, Debra received $250.00 per month in child support which she deposited in the joint checking account, along with her monthly salary of $1,000.00. Likewise, Paul deposited his monthly salary of $1,575.00 into the joint checking account. With the exception of Paul's contributions made to his PERS account, Paul and Debra were not able to save any money during their marriage. At the time the divorce was filed, it was estimated that Paul paid approximately $30,000.00 in child support out of the joint checking account and his personal account(s) -- an amount almost equal to the $34,000.00 Paul currently has in retirement benefits.

¶7. The parties stipulated that Debra's only claim for marital property in this divorce was against Paul's (PERS) account from the date of marriage, May 31, 1992, until the date of separation, June 1, 2001. Paul made no claim as to Debra's retirement account. On December

4, 2003, after an "on-the-record" analysis of the *Ferguson* factors, the chancellor rendered the divorce decree and held that Debra was entitled to one half of Paul's retirement account acquired during the ten years of marriage. The court ruled that Paul was not entitled to any percentage of Debra's retirement account with the Baptist Memorial Hospital. The chancellor did not award either party attorneys' fees in this matter. It is from this decree that Paul appeal's the chancellors distribution of the martial assets.

## DISCUSSION

¶8. In domestic relations cases, this Court must employ a limited standard of review. *Carrow v. Carrow,* 741 So.2d 200, 202 (Miss. 1999). The reviewing court employs a limited standard of review for the division and distribution of property in a divorce proceeding. *Reddell v. Reddell,* 696 So.2d 287, 288 (Miss. 1997). This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *Owen v. Owen,* 798 So.2d 394, 398 (Miss. 2001); *Turpin v. Turpin,* 699 So.2d 560, 564 (Miss. 1997). This Court will look to the chancellor's application of the *Ferguson* factors when reviewing questions of equitable distribution. *Ferguson v. Ferguson,* 639 So.2d 921, 928 (Miss. 1994); *Wells v. Wells*, 800 So.2d 1239, 1242 (Miss. Ct. App. 2001). In reviewing a chancellor's judgment, this Court does not conduct a *Ferguson* analysis anew, but reviews the judgment to ensure that the chancellor followed the appropriate standards and did not abuse his discretion.

¶9. The sole issue for this Court to decide is whether the chancellor's award to Debra of one half of Paul's retirement benefits acquired during their marriage complies with the

4

*Ferguson* standards. In dividing a marital estate between parties in a divorce proceeding, the character of the parties' assets, marital or nonmarital, must be determined; the marital property is then equitably divided, employing specific factors as guidelines, in light of each parties' nonmarital property. *Johnson v. Johnson,* 650 So.2d 1281, 1287 (Miss. 1995). As the parties observe in their briefs, for purposes of diving marital property, retirement plans are considered martial assets. *Carrow,* 741 So.2d at 202; *Coggin v. Coggin,* 837 So.2d 772, 775 (Miss. Ct. App. 2003) . Per the parties stipulation and as recognized by the chancellor, Paul's PERS retirement account is properly classified as a martial asset which, like all martial assets, must be equitably divided upon dissolution of the marriage. *See generally Ferguson,* 639 So.2d at 928.

¶10.    Paul contends that the trial court's award of one half of his retirement benefits acquired during the marriage constitutes error. Paul argues that Debra was gainfully employment throughout their marriage and likewise, maintained her own retirement plan. Further, Paul argues that upon being ordered to pay Debra 50% of his retirement benefits, he would have to close his PERS account and suffer a significant tax burden. Paul avers that these facts suggest that the Chancellor's award of 50% of his retirement benefits was improper.

¶11.    After receiving testimony from both Paul and Debra, the chancellor conducted an "on-the-record" analysis of the *Ferguson* factors. The chancellor held that both parties substantially contributed to the accumulation of the PERS retirement account through their work at home and on their respective jobs. The chancellor observed that Paul did not have any particular emotional or market value attached to his retirement account. The trial court reiterated that while the retirement account is an asset Paul brought to the marriage, per the

parties' stipulation, only the portion contributed during the marriage was subject to equitable division. With regard to the tax consequences, the trial court observed that such burden would be applied proportionally to the parties upon division of the retirement funds. The trial court determined that both parties were in financial need.[1] However, considering the testimony of both parties, the trial court ruled that under current circumstances, Paul had a better current and potential earning capacity. Summarily, the chancellor ruled that Debra was entitled to one-half of the retirement account acquired during the ten years of marriage. Contrary to Paul's contentions, we find absolutely no evidence that the Chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard in equitably dividing the martial assets in this case. Further, there is no evidence that the Chancellor abused his discretion in deciding that Debra was entitled to one-half of Paul's retirement account which accumulated during their marriage.

¶12. Paul testified that he earned $1,575.00 per month during their marriage, but was also required to pay $300.00 per month in child support, which came out of the family checking account. This makes Paul's monthly contribution to the family $1,275.00. Debra testified that she earned $1,000.00 per month during the marriage, and also received $250.00 in child support per month for the benefit of the child which resided with the couple. Thus, Debra's monthly contribution to the family was $1,250.00. Also, Paul testified that Debra performed approximately 70% of the house work, while he performed about 30%. The trial court observed that Paul paid approximately $30,000.00 in child support out of the family checking account during their marriage -- an amount almost equal to the $34,000.00 now in Paul's

---

[1] During the period of separation, both Paul and Debra filed for bankruptcy.

retirement account. The chancellor specifically observed that Paul's current and potential earning capacities were better than Debra's. The parties' net financial contributions, joint bills and expenses, current and future earning capacities, and contributions to the home environment seemingly reflect that the chancellor's *Ferguson* analysis was consistent with his determination that Debra was entitled to one half of Paul's retirement account acquired during the marriage. Taken collectively, these facts demonstrate that the chancellor's award was both proper and equitable in light of *Ferguson.*

¶13. The crux of Paul's argument is that the chancellor's award to Debra was too large. In considering a chancellor's review and application of the *Ferguson* factors, this Court and the Court of Appeals have routinely upheld an equitable division of one-half of the marital assets where warranted by the facts and circumstances. *See Savelle v. Savelle,* 650 So.2d 476, 478 (Miss. 1995) (chancellor properly distributed to wife one half of the amount which husband contributed to pension plan during marriage, rather than award of 50% interest in husband's retirement benefits); *Baker v. Baker*, 861 So.2d 351, 353 (Miss. Ct. App. 2003) (chancellor did not abuse his discretion in divorce proceeding in deciding not to award wife a 50% share of husband's retirement benefits, but to instead award periodic alimony and use the monthly amount of retirement benefits to determine an appropriate award of periodic alimony); *Reynolds v. Reynolds,* 755 So.2d 467, 468 (Miss. Ct. App. 1999) (chancellor found that 38% of husband's government retirement benefits accumulated during the marriage; therefore, due to the wife's contributions to the marital home, she was awarded one-half, or nineteen percent of the husband's retirement benefits); *Black v. Black,* 741 So.2d 299, 302 (Miss. Ct. App. 1999) (chancellor's decision to distribute one half of husband's retirement benefits to wife

was entirely within his discretion). In reviewing a Chancellor's distribution of marital assets upon divorce, this Court's focus is upon equity, not necessarily equality. When the facts and circumstances warrant an equitable division of the martial estate of one-half or greater and such a division complies with the *Ferguson* principles, then we are duty bound to let such a distribution stand.

¶14. By stipulation, Debra's claim in this case was exclusively against Paul's retirement benefits. Paul argues that the chancellor erred in not explicitly considering Debra's own retirement plan before awarding her one half of his retirement benefits acquired during marriage. However, the record reflects that Paul made no claim to Debra's retirement account. Thus, Paul's complaints that the chancellor erred by not explicitly considering Debra's own retirement account cannot be heard when he made no claim against that account during the divorce proceedings. We find no indication from the record that the chancellor ever explicitly considered Debra's retirement account during the *Ferguson* analysis. However, this Court has ruled that when reviewing the *Ferguson* factors, a chancellor may consider only the factors applicable to the property placed before the chancery court's consideration. *Weathersby v. Weathersby,* 693 So.2d 1348, 1354 (Miss. 1997). Accordingly, not all of the *Ferguson* factors must be considered in every case. *Id.* We hold that the chancellor did not err in failing to explicitly consider Debra's retirement funds before making the equitable division in the instant action. While the chancellor heard specific arguments concerning Debra's retirement account, we conclude that failing to consider said account on the record was not error when Paul made no claim against it during the entire proceeding. The record reflects that the chancellor considered those factors applicable only to the Paul's retirement account since the

parties stipulated that this was the only property subject to equitable distribution. We find that the chancellor's analysis was sufficient, and thus, we find no clear error in his division of the marital property in this case.

**CONCLUSION**

¶15. We hold that the Chancellor did not err in awarding Debra fifty percent of Paul's retirement benefits acquired during the ten years of their marriage. Further, Paul offers no evidence to suggest that in the case at bar, the chancellor abused his discretion in dividing the marital assets. The chancellor found and the record reflects that both parties substantially contributed to the accumulation of the PERS retirement account through their work at home and on their respective jobs. The chancellor ruled that Paul had a better current and potential earning capacity under current circumstances. We hold that the chancellor's failure to explicitly consider Debra's retirement benefits on the record does not constitute error because Paul made no claim against these funds during the divorce proceedings. We hold that the Chancellor's application of the *Ferguson* factors was proper. Therefore, the judgment of the Chancery Court of Lafayette County is affirmed.

¶16. **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**

9