IRVING, J.,
 

 for the Court.
 

 ¶ 1. The Pontotoc County Chancery Court granted Darían and Frances Dye an irreconcilable differences divorce. The chancellor awarded Frances sole legal and physical custody of the parties’ three minor children and divided the marital estate. Feeling aggrieved, Darían appeals and asserts that the chancellor erred by classifying his retirement account, as well as tractors and other equipment, as marital property, and that the chancellor abused his discretion by ordering Darían to provide Consolidated Omnibus Budget Reconciliation Act (COBRA) insurance to Frances.
 
 [2]
 

 ¶ 2. We find merit to Darian’s claim that the chancellor erred in the distribution of the marital estate. Therefore, we affirm in part and reverse and remand in part for further consideration consistent with this opinion.
 

 FACTS
 

 ¶ 3. Darían and Frances were married on June 6, 1995, and one child was born to this union on July 22, 1998. Frances has two children from a previous marriage. The parties were living together as husband and wife in Pontotoc County on October 7, 2005, when Frances filed a complaint for divorce on the ground of habitual cruel and inhuman treatment. Darían filed an answer and counterclaim, wherein he asserted that he should be granted a divorce on the ground of habitual cruel and inhuman treatment.
 

 ¶ 4. Also, on October 7, 2005, Frances filed a motion for emergency relief with the chancery court, seeking, among other things, immediate temporary legal and physical custody of the children. In her motion, Frances asserted that she had
 
 *1243
 
 “learned that [Darían] is accused of serious misconduct involving ... one or more of the parties’ minor children.” The chancellor granted Frances’s motion. On November 28, 2005, the chancery court, on its own motion, appointed a guardian ad litem. The record reflects that Darían was indicted for one charge of sexual battery and one charge of fondling one of the children. Following a jury trial, Darían was acquitted of both charges on April 14, 2007.
 

 ¶ 5. On July 12, 2006, the parties withdrew their fault-based grounds and consented to an irreconcilable differences divorce. They submitted issues upon which they could not agree to the chancery court for resolution. The divorce action proceeded to trial on July 12, 2006, and, after several continuances, concluded on December 14, 2007.
 

 ¶ 6. At the conclusion of the trial, the chancellor rendered a bench opinion. In his analysis of the
 
 Ferguson
 
 factors,
 
 [3]
 
 the chancellor found that both parties had dissipated marital assets in the following manner: Frances’s cashing in of her IRA, which was valued at $25,000; Darian’s sale of a 1995 GMC Jimmy; and Darian’s cashing in of stock valued at $5,770. Thus, the chancellor concluded that Frances owed Darían $12,500 for his share of her IRA and that Darían owed Frances $2,885 for her share of the stock. The chancellor also ordered Darían to pay Frances $1,701.05 for his half of one of the children’s medical bills. Then, the chancellor valued the marital estate and awarded $183,567 to Frances and $182,451.95 to Darían. After making the appropriate adjustments for the parties’ dissipation of assets, including the GMC Jimmy and the unpaid medical bills by Darían, the amount of Frances’s share was reduced by $5,413.95. Also, the chancellor awarded sole legal and physical custody of the children to Frances and ordered Darían to make monthly child support payments of $485.55.
 

 ¶ 7. On March 3, 2008, the chancellor issued a final judgment wherein he incorporated the findings made in his bench opinion. On March 14, 2008, Darían filed a motion to alter or amend the judgment pursuant to Rule 59 of the Mississippi Rules of Civil Procedure. Shortly thereafter, the chancery court issued an order, overruling Darian’s motion. However, the chancery court clarified its final judgment as to the amount that Darían had to pay Frances as reimbursement for medical expenses.
 

 ¶ 8. Additional facts, as necessary, will be related during our analysis and discussion of the issues.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 ¶ 9. An appellate court “employs a limited standard of review for the division and distribution of property in a divorce proceeding.”
 
 Phillips v. Phillips,
 
 904 So.2d 999, 1001(¶ 8) (Miss.2004) (citing
 
 Reddell v. Reddell,
 
 696 So.2d 287, 288 (Miss.1997)). The chancellor’s findings of fact will not be disturbed “unless the chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.”
 
 Id.
 
 (citing
 
 Owen v. Owen,
 
 798 So.2d 394, 398(¶ 10) (Miss.2001)). Appellate courts “look to the chancellor’s application of the
 
 Ferguson
 
 factors when reviewing questions of equitable distribution.”
 
 Id.
 
 (citing
 
 Ferguson,
 
 639 So.2d at 928).
 

 1. Distribution of the Marital Estate (a) Retirement Account
 

 ¶ 10. Darían asserts that the chancellor erred by factoring his Day-Brite retire
 
 *1244
 
 ment account, valued at $68,803, into the distribution of the marital estate. We note at the outset that the evidence as it relates to the amount, if any, that remains in Darian’s retirement account is unclear. At trial, Darian testified that he had expended approximately $30,000 of the $68,803 in order to pay bills and other expenses. Thus, according to Darian’s trial testimony, it appears that only $38,803 remains in the Day-Brite account. However, Darian argues on appeal that he was forced to expend his
 
 entire
 
 retirement account on legal representation to defend himself against the criminal charges brought against him. Specifically, Darian argues that defending the criminal charges was “financially devastating” to the point that he spent his life savings, including his retirement account, to pay legal expenses.
 

 ¶ 11. The chancellor awarded the entire Day-Brite account to Darian, which, according to the chancellor, was valued at $68,803. The chancellor did not discuss Darian’s testimony that he had expended approximately $30,000 of the account. Because we are unable to conclude from the record whether Darian’s retirement account was completely depleted or was reduced by only $30,000, we reverse and remand for the chancellor to make a determination of the amount, if any, that remains in the retirement account. Also, the chancellor should make a determination as to whether Darian’s expenditures, which were made with money withdrawn from the account, were legitimate marital expenses that should not be charged against him.
 

 ¶ 12. Darian also argues that the chancellor erred in failing to find that the portion of the retirement account that he had accumulated prior to the marriage is his separate estate. The record clearly reflects that Darian became employed at Day-Brite in 1987 and worked there until 2000. Thus, Darian argues that since he and Frances did not marry until 1995, the portion of the retirement account that he had earned prior to his marriage is his separate property. Accordingly, Darian asserts that the chancellor erred in classifying his entire retirement account as marital property.
 

 ¶ 13. Darian directs our attention to
 
 Arthur v. Arthur,
 
 691 So.2d 997 (Miss.1997), as he contends that it supports his position. In
 
 Arthur,
 
 the chancellor awarded one-half of Jerry Arthur’s retirement account to his former wife, Peggy, even though the retirement funds had been accumulating prior to their marriage.
 
 Id.
 
 at 1003. On appeal, our supreme court reversed the chancery court and held that “[a]ssets are not subject to distribution where it can be shown that such assets ‘are attributable to one of the parties’ separate estates prior to the marriage or outside the marriage.’”
 
 Id.
 
 at 1002. In reaching its decision, the
 
 Arthur
 
 court opined:
 

 Indeed, the retirement funds at issue not having been “acquired or accumulated
 
 during
 
 the marriage,” they do not fall within
 
 Hemsley
 
 ⅛ definition of marital assets subject to equitable distribution.
 
 [Hemsley v. Hemsley,
 
 ] 639 So.2d [909,] 915 [ (Miss.1994) ] (emphasis added). The evidence indicates instead that these funds are “attributable to one of the parties’ separate estates
 
 prior
 
 to the marriage.”
 
 Id.
 
 at 914 (emphasis added).
 
 Jerry’s retirement funds which were accumulated prior to the parties’ marriage are therefore clearly the type of assets this Court determined in Hems-ley would not be subject to equitable distribution upon divorce. Peggy Arthur thus was not entitled to one-half of Jerry’s pension funds accumulated pri- or to the marriage, nor to any portion of the interest thereon.
 
 There having been
 
 *1245
 
 no evidence at trial as to what portion of the funds was accumulated prior to the marriage, we reverse this award and remand for a determination thereof.
 

 Id.
 
 at 1003-04 (third emphasis added).
 

 ¶ 14. We reach the same conclusion as did the
 
 Arthur
 
 court. The chancellor erred in considering the entirety of Dari-an’s retirement account as a part of the martial estate. Clearly, the portion of the retirement account that accumulated prior to the parties’ marriage is Darian’s separate property. On remand, the chancellor must determine the percentage of the retirement account that was accumulated prior to the marriage and deduct that amount from the total amount of the retirement account that had been accumulated at the time of the divorce. As previously noted, the chancellor must also determine whether any portion of the retirement account was improperly dissipated during the marriage, and if so, make the proper adjustments during the equitable redistribution of the marital estate.
 

 (b) Equipment
 

 ¶ 15. Darian also asserts that the chancellor erred in classifying two Ford tractors, a bush-hog, and a finishing mower, with a total value of $30,000, as marital property. Darian points to his trial testimony that the equipment belonged to his father and that he simply insured it under his homeowners insurance policy because it was cost-effective to do so. Darian testified that he did not own any of the equipment. Therefore, Darian contends that the chancellor erred in finding that the equipment was marital property. He further asserts that, even if the chancellor did not err in considering the equipment to be marital property, the chancellor nevertheless erred in treating all of it as marital property because the evidence, as reflected by his testimony, is that he owned only a one-third interest in the equipment. We note that Darian’s testimony was not the only evidence before the chancellor on this point. Frances also testified regarding the ownership of the equipment, although her testimony on the matter did not necessarily disprove Darian’s assertion that the equipment was owned by his father, or at best, that he owned only a one-third interest in it. She testified as follows on direct examination:
 

 Q. There’s some testimony last time about two Ford tractors, a bush-hog, and a finishing mower, which you valued at $30,000.00. I believe Mr. Dye testified that /all didn’t own those; is that correct?
 

 A. Yes, sir.
 

 Q. Would you tell us the stories on those tractors and who you think owns them and why?
 

 A. I believe they were owned by us. Darian indicated that his father had given them to us. They stayed on our property, and we insured them, and they were used for the upkeep of our property.
 

 Q. And /all provided the insurance on them?
 

 A. Yes, sir.
 

 ¶ 16. Then, on cross-examination, Frances gave the following testimony:
 

 Q. Mrs. Dye, I’m going to hand you a document. Do you recognize that document?
 

 A. No.
 

 Q. Is that not an application concerning a particular tractor that is titled in Don Dye & Sons’ business?
 

 A. It appears to be an invoice.
 

 Q. And what is that invoice for?
 

 A. It says — okay. Used 3930 Ford tractor, perhaps, and a new bush-hog.
 

 Q. And in whose name is it in?
 

 
 *1246
 
 Don Dye & Sons. >
 

 And do you recognize this document, this Bill of Sale? cO
 

 I’ve never seen it before. No. t>
 

 What does that document purport to be? <€>
 

 Let me read it, please. (Reviewing document.) It’s a Bill of Sale.
 

 And it’s a Bill of Sale for what?
 
 &
 

 A Ford 8930 tractor. <¾
 

 And whose name is it in? o?
 

 Don Dye. <j
 

 And that’s not Darían Dye, is it?
 
 <y
 

 No. It looks like it’s a year after the invoice.
 
 <
 

 Could it be two different tractors? <©
 

 There’s nothing to tell you what this represents specifically. He purchased a lot of tractors.
 
 >
 

 Okay. The point being, Mrs. Dye, is most of those tractors if not all of those tractors that were on your premises out there were in the name of Don Dye & Sons; correct?
 
 &
 

 That’s correct. p>
 

 So, at best, he owned a third interest in the tractor; correct? <©
 

 If we’re going that way with it, then he would own a third interest in all the tractors that were there.
 

 Well, how many tractors were there?
 
 &
 

 Six to eight. i>
 

 WOiat were the names of them and what were the values of them? <©
 

 There was four or five Fords. I think he still had the John Deere. He might have still had a Case tractor.
 

 Y’all had 31 acres total; correct? <©
 

 That’s correct. i>
 

 Q. Is it not — is it not unreasonable to you that you that you would need to own two tractors?
 

 A. The reason being that I was told was that Darían kept one hooked up to a bush-hog and one hooked up to a finishing mower, and those two were never put out where the other tractors were being sold. Darían kept those behind his shop.
 

 ¶ 17. As reflected above, Frances conceded that Darían owned at least a one-third interest in the equipment that was kept on their property; however, as noted, Darían testified that he did not have an ownership interest in the equipment. “Where conflicting testimony is presented, expert and otherwise, the chancellor is required to make a judgment on the credibility of the witnesses in order to resolve the questions before the court.”
 
 Broadhead v. Bonita Lakes Mall, Ltd.,
 
 702 So.2d 92, 101(¶ 32) (Miss.1997) (citing
 
 Doe v. Doe,
 
 644 So.2d 1199, 1207 (Miss.1994)). The chancellor determined that the equipment was marital property and stated the following:
 

 There are two tractors and a bush hog. There’s testimony about this. Now, Da-rían testified that his father owned this equipment and it was cheaper for him to add to it on his homeowner’s insurance rather than ensure [sic] it through the business. Francis [sic] valued this at $27,000 based on insurance coverage. She testified that Darían told her that his father gave it to them. They were used for the upkeep on their property. They provided insurance on it. The Court finds that really those are marital assets and that they did, in fact, exist.
 

 In making his determination, the chancellor considered the evidence before him, i.e., the testimonies of Darían and Frances. We cannot say that, based on the evidence before him, the chancellor was manifestly
 
 *1247
 
 wrong or clearly erroneous in finding that the equipment was marital property. We find no merit to this issue.
 

 2. COBRA Health Insurance
 

 1118. Darían also argues that the chancellor erred in ordering him to provide COBRA health insurance for Frances. The chancellor ordered the following: “Da-rían shall provide Frances with COBRA health insurance coverage commencing on January 1, 2008, and continue said coverage for so long as allowed by law.” In
 
 Ferguson,
 
 639 So.2d at 936, our supreme court affirmed a chancellor’s order that the husband provide COBRA insurance coverage to his wife “for as long as the law allowed.” The court determined that pursuant to 29 U.S.C.S. § 1162(2)(A)(iv) (1993) and 29 U.S.C.S. § 1163(3) (1993) this period is thirty-six months.
 
 Id.
 
 Based on
 
 Ferguson,
 
 we cannot find that the chancellor erred in ordering Darían to provide COBRA insurance to Frances for thirty-six months. This issue lacks merit.
 

 ¶ 19. THE JUDGMENT OF THE PONTOTOC COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE APPELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [2]
 

 . Darían raises four issues; however, for the sake of clarity, we address as one issue the issues as they relate to the chancellor’s classification of the marital property.
 

 [3]
 

 . In
 
 Ferguson v. Ferguson,
 
 639 So.2d 921, 928 (Miss.1994), the Mississippi Supreme Court set forth factors that chancellors must consider when equitably dividing a marital estate.