KITCHENS, Justice,
concurring in part and dissenting in part:
¶ 29. Although I agree with reversing the judgment of joint custody by the Court of Appeals, it is not entirely clear why this Court’s majority reverses the chancellor’s grant of sole custody to the mother. The Court of Appeals was correct in finding that the chancellor’s Albright analysis was flawed, and I would not disturb that finding. Albright v. Albright, 437 So.2d 1003 (Miss.1983). Moreover, I cannot agree that it was error for the chancellor “not [to] issu[e] an injunction” against the mother, especially given the incomplete record on appeal. Maj. Op. ¶ 23. For these reasons, I respectfully concur in part and dissent in part.

(1) Child Custody and Visitation

¶ 30. As an appellate court, we always must be mindful of the applicable standards of review. In family law matters, our review is limited, and we will not reverse a chancellor’s findings “unless the chancellor was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied.” Yelverton v. Yelverton, 26 So.3d 1053, 1056 (Miss.2010) (quoting Phillips v. Phillips, 904 So.2d 999, 1001 (Miss. 2004)). However, questions of law are reviewed de novo. Id. (quoting Woodell v. Parker, 860 So.2d 781, 785 (Miss.2003)). Thus, “where the chancellor improperly considers and applies the Albright factors, an appellate court is obliged to find the chancellor in error.” Brekeen v. Brekeen, 880 So.2d 280, 283-84 (Miss.2004) (quoting Hollon v. Hollon, 784 So.2d 943, 946 (Miss. 2001)).
¶ 31. In his opinion, the chancellor entered specific findings of fact as to each Albright factor and determined that, although both parties were “appropriate and qualified parents to have custody,” the best interest of the children would be *1238 served by granting sole legal and physical custody to the mother. The chancellor determined that all but three of the Al-bright factors were neutral. Of those factors that were not deemed neutral, the chancellor found that all three favored the mother. These factors were “continuity of care,” “best parenting skills,” and “willingness to provide primary childcare.” In reaching his decision, the chancellor noted that he and the parties agreed “that this is not a case in which joint legal or physical custody is in [the children’s] best interest.”
¶ 32. In a very thorough review, the Court of Appeals held that the chancellor’s Albright analysis was flawed, and that the parties were “on a level playing field with regard to the question of custody.” On this point, I agree with the Court of Appeals and find no reason to disturb its decision in reversing the custody determination.
¶ 33. Yet, instead of reversing and remanding the custody issue to the trial court, the Court of Appeals awarded joint custody of the children to the parents, concluding “that the chancery court’s original temporary order was a proper adjudication of the issues.” In reinstating the temporary order, the Court of Appeals did not take into account the undisputed fact that the parties no longer desired joint custody and that joint custody was no longer in the best interest of the children. Because circumstances had changed since the temporary order, the entire matter should have been remanded to the chancery court for reevaluation. Accordingly, I would limit our review of the Court of Appeals’ decision on this issue and reverse its judgment of joint custody.[36]

(2) Canine Injunction

¶ 34. In addition to rendering joint custody, the Court of Appeals directed the chancery court to enjoin Julie Anne from allowing “dogs of any number and weight to roam loose or occupy any portion of her residence utilized by the parties’ children as living space.”[37] The Court of Appeals apparently reached this holding based on the following analysis:
[I]n reference to the Albright factor of “stability of the home environment,” the chancery court stated that “[a]lthough the mother’s home prior to and immediately following the separation of the parties showed evidence of lack of care and cleanliness, after investigation by the Department of Human Services [ (DHS) ], it was found to be appropriate for the children.” This is blatantly incorrect. At oral argument, counsel for both parties admitted on the record that an investigation by DHS was never completed due to confusion as to Julie Anne’s proper address. Accordingly, any evidence indicating issues of cleanliness and safety at Julie Anne’s residence due to the dozens of dogs living on the property, including breeds with dangerous propensities, and in the house *1239 has yet to be negated. Because the chancery court declined to extend the temporary order’s restriction on the number and weight of dogs allowed in the portions of Julie Anne’s house used by the children, we are uncertain as to the current conditions within Julie Anne’s home.
Cuccia v. Cuccia, 91 So.3d 27, 35 (Miss.Ct. App.2011) (emphasis added). In other words, the chancellor relied on a DHS report in finding the mother’s home “appropriate for the children,” but the Court of Appeals found that such a report did not exist.
¶ 35. While the Court of Appeals’ concerns about the safety of the children are laudable, the record reveals that a DHS home study was completed and this fact was not disputed by the parties at trial. In fact, the trial was continued because “a home study had been performed by [DHS] but had not been provided to the Court.” After continuing the trial, the chancellor entered a written order directing that “DHS immediately provide the Court and Counsel for both parties a copy of all documents contained in the files kept in the ordinary and regular course of DHS’s business incident to the home study performed as ordered by this Court.” When the trial resumed several weeks later, the attorneys for both parties agreed on the record that the chancellor had “received that report, and both parties ha[d] a copy of it.”
¶ 36. Confusion over the existence of the DHS file is understandable, given that neither party is represented on appeal by trial counsel, and the DHS documents are not in the record. Nevertheless, the chancellor did have the benefit of this file; and, as the fact finder, he was in the best position to determine whether the provisions of the temporary restraining order should have been made permanent. The temporary order restricting the number and size of dogs in Julie Anne’s home was issued in May 2008, based on evidence from a hearing on March 25, 2008. The trial occurred on August 11, 2009, and in the meantime, DHS concluded that the mother’s home was a safe environment for the children. When the chancellor entered his final order, he specifically found “[t]here is no evidence to reflect that the [mother’s] home has any problems whatsoever.” (Emphasis added.) Accordingly, I would reverse the Court of Appeals’s directive that the chancellor revisit this issue on remand.
DICKINSON, P.J., AND CHANDLER, J., JOIN THIS OPINION.

. It appears that the majority opinion reaches the same result, but it does not articulate its reason for reversing the chancellor. Paragraph 20 briefly touches on the Albright factors, but the opinion does not disturb the chancellor’s grant of sole custody to the mother. The concluding paragraph simply instructs the chancery court to "reevaluate the custody matter.” Maj. Op. ¶ 27.

. The majority agrees, finding that "[t]he chancery court's order is devoid of any consideration regarding the children being around the dogs that Julie Anne sometimes has in her home through her dog-rescue operation.” Maj. Op. ¶ 23.