ISHEE, J.,
for the Court:
¶ 1. Dr. Robert Terrell and his wife, Mary Terrell, filed for a divorce in 2007 in the Jackson County Chancery Court. Their twenty-two-year marriage was dissolved in 2011 when a final judgment was entered by the chancery court awarding Robert and Mary a divorce based on irreconcilable differences. In the order, the chancery court also determined the issues of alimony, distribution of the Terrells’ assets, child support, expenses, and fees. Mary now appeals the chancery court’s order asserting the chancery court (1) failed to equitably divide the marital assets; (2) erroneously classified an asset as marital; (3) erred in its analysis of alimony and specifically erred in failing to award her periodic alimony; (4) erred by assigning to her half of the renovation and sale costs for the marital home; and (5) erred in failing to award her attorney’s fees, court costs, and expert-witness fees. We affirm in part and reverse and render in part.
STATEMENT OF FACTS
¶ 2. Robert and Mary wed in Oklahoma in 1986. At the time, Robert had graduated from college with a degree in chemical *836 engineering, but had returned to school to complete his medical degree. He was a second-year resident at Oklahoma Teaching Hospital at the time of the nuptials. Robert was also actively enrolled in the military. Mary had received her bachelor’s degree in sociology and was working in the risk-management department at Baptist Medical Center at the time of the marriage. The Terrells had a child, Catherine, and three years later, Mary quit work to stay home and care for the baby.
¶ 3. In 1997, the family moved to Ocean Springs, Mississippi, where Robert has remained employed by Bienville Orthopedics (the clinic). Shortly thereafter, Robert retired from the military. He currently draws his military retirement in addition to his earnings at the clinic. He also maintains a small ownership interest in several medical facilities in the Ocean Springs area, which bring in passive monthly income. The record reflects that Robert’s gross yearly income is approximately $350,000. While he grosses about $29,000 a month, his net monthly pay— after taxes, insurance, and mandatory retirement — is around $16,000.
¶ 4. The Terrells separated in 2007 and filed for a fault-based divorce shortly thereafter. Their daughter, Catherine, had already left for college at Oklahoma State University at the time of the filing. Robert immediately moved out of the marital home, but continued to pay all expenses for the home. Mary lived in the home until relocating to Oklahoma City, Oklahoma, with all of the home’s furnishings in 2010.
¶ 5. She was awarded the following temporary support: $3,000 a month in temporary periodic alimony; $1,250 a month in child support; the use of $65,000, which had been placed into a money-market account; exclusive use of a 2007 Mercedes Benz ML 350; continued payment by Robert of the marital home’s mortgage, property taxes, property insurance, all utilities, and yard expenses; and Robert’s payment of Mary’s health expenses, including all expenses not covered by Robert’s medical insurance policy. Mary was held responsible for her cell-phone payment and her car insurance. Robert was ordered to obtain appraisals on all real property owned by the Terrells and to obtain an expert to appraise Robert’s medical practice and other business interests.
¶ 6. After numerous continuances, the Terrells presented a consent to adjudicate to the chancery court in December 2010. The consent withdrew all fault-based grounds for the divorce and consented to an irreconcilable-differences divorce. Therein, the Terrells requested that the chancery court assess and divide their assets; determine payment of Catherine’s college expenses, Mary’s medical payments, and alimony; and assess all fees, costs, and expenses related to the litigation.
¶ 7. In March 2011, the chancery court issued its final judgment. The Terrells’ estate was valued at approximately $1.2 million. Robert was awarded his medical practice and his interests in several businesses. He was also awarded his 2000 Jeep Cherokee, various personal property, and his 401(k) retirement fund valued at $337,335. Additionally, the circuit court awarded him half of the value of his daughter’s 2008 Mazda 2, which totaled approximately $7,862. Robert was ordered to pay Mary’s COBRA insurance premiums for thirty-six months at $450 a month and the yearly deductible of $2,500, if accrued.
¶ 8. Mary was awarded an IRA in the amount of $417,982; the $65,000 in cash remaining in the money-market account; a $5,000 death-benefit policy; her Mercedes SUV; and personal property and jewelry. *837 She was also granted half of the value of Catherine’s vehicle. Mary was further awarded half of Robert’s military retirement, which pays $537.67 to her a month. Finally, she was given lump-sum alimony at $1,000 a month, for a total of $42,157.60.
¶ 9. The estate was divided between the parties in equal amounts of $595,387.10. The marital home was valued at $470,000, but the two mortgages on the home total $471,113. The anticipated difference following the sale of the home, plus all repair costs and sale expenses totaled about $58,000. This cost was split between the parties. The chancery court also found that since neither party exhibited an inability to pay, each party would be responsible for his or her individual litigation expenses. Finally, since Catherine was twenty-one years old at the time of the trial, the chancery court determined that it was without authority to order the payment of child-support or college expenses.
¶ 10. Mary now appeals claiming the following: (1) the chancery court erred in failing to divide the marital estate equitably; (2) the chancery court erred in its designation of Catherine’s vehicle as a marital asset; (3) the chancery court erred by failing to consider all relevant factors relating to alimony and, in doing so, failed to award her periodic alimony; (4) the chancery court erred in requiring her to pay one-half of the costs associated with the repair and sale of the marital home; and (5) the chancery court erred in failing to award her litigation expenses.
DISCUSSION
I. Division of Marital Assets
¶ 11. Mary’s first two assignments of error relate to the division of assets in the marital estate. Accordingly, we will address them in tandem. In domestic-relations cases, we employ a limited standard of review. Carrow v. Carrow, 741 So.2d 200, 202 (¶ 9) (Miss.1999). Specifically, “[w]e will not disturb the findings of a[c]hancellor unless the [c]hancellor was manifestly wrong [or] clearly erroneous, or, [applied] an erroneous legal standard[.]” Id. (citation omitted). With regard to division and distribution of property, we maintain the objective of “a fair division based upon the facts of the case[.]” Reddell v. Reddell, 696 So.2d 287, 288 (Miss.1997) (referencing Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994)).
¶ 12. In general, when dividing and distributing property, courts employ the following factors, which were laid out in Ferguson, 639 So.2d at 928:
(1) Substantial contribution to the accumulation of the property ...[;]
(2) The degree to which each spouse has expended, withdrawn[,] or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decreet,] or otherwise[;]
(3) The market value and the emotional value of the assets subject to distribution^]
(4) The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
(5) Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
(6) The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
*838 (7) The needs of the parties for financial security with due regard to the combination of assets, income[,] and earning capacity; and[ ]
(8) Any other factor which in equity should be considered.
“In reviewing a chancellor’s judgment, [the appellate court] does not conduct a Ferguson analysis anew, but reviews the judgment to ensure that the chancellor followed the appropriate standards and did not abuse his discretion.” Phillips v. Phillips, 904 So.2d 999, 1001 (¶ 8) (Miss.2004).
¶ 13. Equitable distribution of assets does not always constitute equal distribution of assets, since chancellors are empowered with the ability to impart fairness into the process of dividing the estate rather than awarding a percentage value to the parties. See Love v. Love, 687 So.2d 1229, 1282 (Miss.1997). Mary asserts that the chancery court failed to equitably divide the marital estate. In its division of the estate, the chancery court technically awarded Robert $595,387.10 of the total marital assets, and awarded Mary $553,229.50. However, the chancery court also awarded Mary $42,157.60 in lump-sum alimony to arrive at an equal division of $595,387.10 per party. Additionally, Mary was granted half of Robert’s military retirement income, which totals approximately $538 a month. Robert was also ordered to pay Mary’s monthly COBRA costs, which total $450 a month, plus the $2,500 annual deductible, should it arise.
¶ 14. In sum, Mary actually received a higher award in the divorce than did Robert when taking into account extra expenses and payments. Regardless, Mary argues that her litigation expenses and the costs of repairing and selling the marital home lessen her actual award. She also argues that the principles of equity demand that the chancery court take into account her current monthly living expenses of $6,500, which require her to draw money out of and pay taxes on the $417,000 IRA account. Later in this opinion, we will address the issue of awarding costs and expenses. Nonetheless, at present it must be noted that Mary’s expenses and means of meeting her expenses were factors considered by the chancery court at the time of distribution. The chancery court cited the Ferguson factors and the benchmark Hemsley case in its analysis of the parties’ monetary circumstances. To overturn the chancery court’s findings would require an abuse of discretion and an improper application of the law on the part of the chancery court. That does not exist in the present case. This issue is without merit.
¶ 15. Next, Mary contends that the chancery court erred in placing Catherine’s automobile into the category of marital assets. For purposes of a divorce proceeding, the definition of marital property is “any and all property acquired or accumulated during the marriage.... We assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic[,] or otherwise[,] are of equal value.” Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). “Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties’ separate estates prior to the marriage or outside the marriage.” Id. at 914.
¶ 16. Mary does not contest the fact that the automobile in question was purchased during the course of the marriage. Rather, she asserts that because Robert purchased the vehicle for Catherine, titled the vehicle in Catherine’s name, and has transferred his ownership interest in the vehicle to Catherine, the value of the *839 automobile, as it pertains to the divorce, erroneously inflates Mary’s dollar value in the marital estate. She argues that the value of the entire marital estate should be lessened by the total value of the automobile, or $15,725.
¶ 17. We agree that the vehicle should not have been deemed a part of the marital estate. While it was purchased during the course of the marriage, it is not marital property, nor is it separate property. Rather, it was a gift from Robert and Mary to Catherine, who was a third-party recipient. Catherine has retained physical custody of the vehicle and has been the legal title holder of the vehicle since it was purchased. It was not an asset of Robert or Mary either jointly or separately. Accordingly, we reverse and render this issue specifically for the elimination of Catherine’s automobile from the marital estate.
II. Alimony
¶ 18. Mary next asserts that the chancery court erred by failing to grant her periodic alimony and by failing to consider the proper factors relating to alimony. A “chancellor’s decision on alimony will not be disturbed on appeal unless it is found to be against the overwhelming weight of the evidence or manifestly in error.” Tilley v. Tilley, 610 So.2d 348, 351 (Miss.1992) (citation omitted). In analyzing the parties’ need for alimony, the chancery court cited Lauro v. Lauro, 847 So.2d 843, 848 (¶ 13) (Miss.2003), for the proposition that alimony may be considered only after the marital estate has been equitably divided and a deficit exists for one of the parties. “Equitable distribution and alimony are parts of the same issue.” Cosentino v. Cosentino, 912 So.2d 1130, 1132 (¶ 9) (Miss.Ct.App.2005) (citing Ferguson, 639 So.2d at 929). While the chancellor did not specifically address each of the factors established by the Mississippi Supreme Court in Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), for determining alimony, the chancery court did conduct an extensive analysis of the needs of the parties.
¶ 19. Specifically, the chancellor referenced Cheatham v. Cheatham, 537 So.2d 435 (Miss.1988), for the proper factors to be considered when awarding lump-sum alimony. Those factors include: “(1) [A substantial contribution to [the] accumulation of [the] total wealth of the payor either by quitting a job to become a housewife, or by assisting in the spouse’s business[;] (2) [a] long marriage[;] (3) [w]here [the] recipient spouse has no separate income or the separate estate is meager by comparison[;] [and] (4) [without the lump[-]sum award the receiving spouse would lack any financial security.” Cheatham, 537 So.2d at 438 (citations omitted). The chancellor concluded that Mary quit work to care for the household, was married to Robert for twenty-three years, had no separate income other than Robert’s support, and would lack the financial stability to maintain her share of the marital estate. Because of this and because Mary’s share of the marital estate was slightly less than Robert’s, she was awarded $42,157.60 in lump-sum alimony to make the division of the marital estate more equitable.
¶ 20. Based on our standard of review, we cannot find this determination to be reversible. The chancery court conducted a proper analysis of Mary’s need for alimony, whether lump-sum or periodic, and determined that lump-sum alimony was appropriate. Again, while an Armstrong analysis was not conducted, the chancery court nonetheless took all relevant factors into account in awarding lump-sum alimony as opposed to periodic alimony, and did so in an effort to maintain *840 equitable division of the assets. As stated by the supreme court: “Alimony is not a bounty to which [a spouse] became entitled to receive indefinitely simply by reason of the fact that at one time [he or] she had been married to [the other spouse].” Beacham v. Beacham, 383 So.2d 146, 148 (Miss.1980) (citation omitted). This issue is meritless.
III. Awarding Costs
¶ 21. Finally, Mary argues that she should not have been forced to pay her litigation costs or the costs to repair and sell the marital home. In determining whether costs should be awarded to a party, the chancery court considers the equitable division of assets. See Hankins v. Hankins, 729 So.2d 1283, 1286 (¶ 13) (Miss.1999). Likewise, it is well settled that a chancery court has broad discretion in determining whether attorney’s fees should awarded. Dillon v. Dillon, 498 So.2d 328, 331 (Miss.1986). We review the award of costs under an abuse-of-discretion standard. Cheatham, 537 So.2d at 440.
¶ 22. Mary’s assertion that her cost of living requires the grant of litigation expenses is meritless. The chancery court determined that neither party had shown an inability to pay litigation expenses, especially after the division of the marital estate. The chancery court was in the best position to determine whether Mary should have been awarded costs, including those for the sale of the marital home and litigation expenses. The chancery court’s conclusion that it was fair and just for Mary to contribute to the costs of repairing and selling the marital home and litigation costs was not an abuse of discretion.
¶23. Likewise, as noted above, the parties’ estate was divided equitably based on several money-market accounts, personal property, and Robert’s business interests. The marital home was not included in the marital estate because the mortgages on the home exceeded the value of the home’s appraisal. In determining the allocation of repairing the marital home and marketing the home for sale, the chancery court reviewed the distribution of the parties’ wealth as well as the total cost of the repairs and sale. The chancery court ordered both parties to pay approximately $29,000 each. In so doing, the chancery court noted that Robert was to pay the mortgages and expenses of maintaining the home until the sale was final. Accordingly, Mary’s argument that it would be detrimental to her financial security to include her portion of the $29,000 is unfounded. She was awarded approximately $595,000 in the marital estate, including a $417,000 IRA. Additionally, had she chosen not to move to Oklahoma, her living expenses would have been , paid for by Robert. As such, her argument that her $6,500 a month current living expenses require more alimony and less costs is without merit.
¶ 24. THE JUDGMENT OF THE JACKSON COUNTY CHANCERY COURT IS AFFIRMED IN PART, AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.