# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-00925-COA

**GEORGE AARON**                                                                                     **APPELLANT**

v.

**ANNIE AARON**                                                                                          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/13/2013 |
| TRIAL JUDGE: | HON. JACQUELINE ESTES MASK |
| COURT FROM WHICH APPEALED: | MONROE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | CANDACE COOPER BLALOCK |
| ATTORNEY FOR APPELLEE: | TAMMY WOOLBRIGHT |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| TRIAL COURT DISPOSITION: | GRANTED APPELLEE'S REQUEST FOR HER SHARE OF APPELLANT'S RETIREMENT FUNDS |
| DISPOSITION: | AFFIRMED: 09/09/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., MAXWELL AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     George Aaron appeals the Monroe County Chancery Court's denial of his request to reconsider the judgment of divorce, in which he was ordered to pay his former wife a monthly payment from his retirement account.  Finding no error, we affirm.

## FACTS

¶2.     George Aaron and Annie Aaron were married on May 25, 1991, in Monroe County, Mississippi.  Annie filed for divorce in 2001.  On August 12, 2002, a judgment of divorce was entered in Monroe County on the ground of irreconcilable differences.  As part of the

divorce, George agreed to pay Annie one-half of his retirement funds acquired during the marriage. The judgment stated the funds would be transferred through a Qualified Domestic Relations Order (QDRO). At the time the judgment was entered, George was not receiving any retirement benefits. The judgment did not state which party was responsible for entering the QDRO.

¶3. In August 2011, George retired from the Amory Police Department. He began receiving benefits through the Mississippi Public Employees' Retirement System (PERS). On November 4, 2011, Annie filed a motion to cite George for contempt, further requesting that he pay to her the share of her past-due retirement funds with interest. In his motion to dismiss, George claimed that it was Annie's responsibility to transfer the funds through a QDRO; he also claimed he had done nothing to prevent Annie from doing so.

¶4. The court held a hearing on February 19, 2013. George testified that he had not made payments to Annie because he expected her to initiate the collection of the funds through the QDRO. Annie testified that she thought it was George's responsibility to draft the QDRO. When Annie realized George was about to retire, she contacted her attorney to garner her share of the funds. Annie was unable to collect due to the fact that PERS retirement benefits are exempt from a QDRO. George's PERS statement reflected that he received around $1,629 per month in retirement benefits.

¶5. On March 6, 2013, the chancellor entered an order ruling that Annie was entitled to her share of George's retirement funds as specified in the original divorce decree. The chancellor calculated the amount owed by dividing the years of marriage (eleven years) by

2

the total years of accumulated retirement (twenty) to determine that fifty-five percent of his retirement benefits were acquired during the marriage. The chancellor then divided that percentage by two to arrive at the twenty-seven and a half percent to which Annie was entitled. Finally, the chancellor multiplied that percentage by $1629.09 — the amount that George was receiving per month in retirement benefits, ordering George to pay Annie $448 per month until further order of the court. The chancellor also determined that George owed Annie $8,512 at the rate of three percent per annum for the amount of unpaid retirement funds from August 2011 to February 2013. As a result, the chancellor ruled that George would pay an additional $100 each month in addition to the $448 until the unpaid amount with interest was paid in full. The chancellor did not find George in contempt.

¶6. George timely filed a motion to reconsider the judgment under Mississippi Rule of Civil Procedure 59. The chancellor denied his motion. George appeals.

## STANDARD OF REVIEW

¶7. "A motion for reconsideration is to be treated by the trial court as a post-trial motion under [Mississippi Rule of Civil Procedure] 59(e)." *Brooks v. Roberts*, 882 So. 2d 229, 233 (¶15) (Miss. 2004) (citations omitted). "An appeal from a denial of a Rule 59 motion may address the merits of the entire underlying proceeding, and review of a trial judge's denial of a Rule 59 motion is limited to abuse of discretion." *Curtis v. Curtis*, 59 So. 3d 623, 629 (¶19) (Miss. Ct. App. 2011) (quoting *Perkins v. Perkins,* 787 So. 2d 1256, 1261 (¶9) (Miss. 2001)).

¶8. Annie failed to file a responsive brief. *See* M.R.A.P. 28(c). As such, the appropriate

3

standard of review comes from *Chatman v. State*, 761 So. 2d 851, 854 (¶9) (Miss. 2000) (internal citation omitted): "An appellee's failure to file a brief on appeal is tantamount to confession of the errors alleged by the appellant. However, automatic reversal is not required if this Court can say with confidence that the case should be affirmed."

## DISCUSSION

¶9. "[I]n order to succeed on a Rule 59(e) motion, the movant must show: (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice. *Brooks*, 882 So. 2d at 233 (¶15). George claims that the following rulings by the chancellor result in clear error: (1) George's PERS benefits are subject to equitable division; (2) Annie is entitled to half of George's retirement funds acquired during the marriage; and (3) such benefits are to be paid until further order of the court.

### I. George's PERS Account

¶10. George argues that, because the divorce decree states that the benefits will be transferred through a QDRO, Annie is not entitled to his PERS funds. George further claims that, under PERS, no retirement accumulated during the marriage.

¶11. "Agreements created in the process of the termination of the marriage by divorce are contracts, 'made by the parties, upon consideration acceptable to each of them, and the law will enforce them.'" *Warren v. Warren*, 815 So. 2d 457, 460 (¶10) (Miss. Ct. App. 2002) (citation omitted) (quoting *Lewis v. Lewis,* 586 So. 2d 740, 745 (Miss. 1991)). In the divorce decree, George expressly agreed to pay Annie one-half of his retirement funds. George was

4

enrolled in PERS at the time the agreement was signed. The fact that the funds could not be transferred through a QDRO does not in itself render the agreement void. *See Warren*, 815 So. 2d at 461 (¶11).

¶12. George also claims that "no retirement accumulated during the marriage, given that the retirement is calculated based upon the highest four years of payment," which he argues occurred after the divorce. At the time of the divorce, George was employed with the Amory Police Department, with a PERS retirement account. Our supreme court has stated that retirement plans are considered marital assets when dividing marital property. *Phillips v. Phillips,* 904 So. 2d 999, 1002 (¶9) (Miss. 2004). In *Phillips*, the court ruled that the wife was entitled to one-half of her husband's PERS account benefits acquired during the marriage, regardless of the fact that the couple was not married the entire time of the husband's state service. *Id*. Here, the right to future payments was acquired during the marriage, even though George claims he reached his highest earning potential after the divorce. This argument has no merit.

¶13. We agree with the chancellor's determination that George's PERS benefits were subject to equitable division, notwithstanding the fact that the Annie's rights to collection of those benefits does not authorize the use of a QDRO.

**II. Calculation and Duration of Benefits**

¶14. In the alternative, George claims that the agreement's reference to use of a QDRO shows the parties' intent to transfer the benefits through a finite, lump-sum payment (a separate-interest QDRO) as opposed to a monthly payment. George seemingly fails to take

5

into account the shared-payment QDRO, a QDRO which assigns the alternate payee a portion of each monthly payment. U.S. Dep't of Labor, The Division of Pensions Through Qualified Domestic Relations Orders, http://www.dol.gov/ebsa/publications/qdros.html, Question 3-3; *see generally* 29 U.S.C. § 1056 (2012). "Under [the shared-payment] approach, the alternate payee will not receive any payments unless the participant receives a payment or is already in pay status." *Id*. George's argument is without merit.

¶15. George further claims that the court erred in failing to provide a termination date for the monthly payments made to Annie. He cites no authority to support his argument. "Failure to cite to relevant authority results in a waiver of the issue on appeal." *Bennett v. State*, 933 So. 2d 930, 953 (¶86) (Miss. 2006). Further, the payments ordered are in the nature of alimony, based on a vested retirement income stream, the right to which is based on George's earnings, fifty-five percent of which were earned during the marriage. The termination of alimony, unless contracted for otherwise, terminates on the death of either the payor or the payee. *In re Kennington's Estate*, 204 So. 2d 444, 449 (Miss. 1967). Therefore, this argument is also without merit.

¶16. Finding no error in the chancellor's calculation and determination of benefits owed to Annie, we affirm.

¶17. **THE JUDGMENT OF THE CHANCERY COURT OF MONROE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.**