# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00383-COA

**MISSISSIPPI DEPARTMENT OF HUMAN SERVICES**                    **APPELLANT**

**v.**

**BEN PORTER**                                                                            **APPELLEE**

DATE OF JUDGMENT:                    02/29/2016
TRIAL JUDGE:                                 HON. GEORGE WARD
COURT FROM WHICH APPEALED:    JEFFERSON COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:        LEWIS CLARK HUNTER
                                                     DEANNA LYNNE GRAVES
ATTORNEY FOR APPELLEE:            PAUL ANDERSON KOERBER
NATURE OF THE CASE:                  CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:          ESTABLISHED PATERNITY AND DENIED
                                                     REQUEST FOR CHILD SUPPORT
DISPOSITION:                                REVERSED AND REMANDED - 06/27/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., BARNES, CARLTON AND WESTBROOKS, JJ.

### BARNES, J., FOR THE COURT:

¶1.     The Jefferson County Chancery Court found that Ben Porter, a Mississippi resident, was not obligated to pay child support for his daughter, an Illinois resident, because she had reached the age of majority under Illinois law.  However, under the choice-of-law provisions of the Uniform Interstate Family Support Act (UIFSA), Mississippi law applies to this child-support action, as the Mississippi court was the first court to issue a support order.  At the time this action was commenced, Porter's daughter was twenty years old—a minor under Mississippi law.  Because the chancellor erred in applying Illinois's age of majority

(nineteen) rather than applicable Mississippi law, we reverse and remand for the imposition of Mississippi law.

## FACTS AND PROCEDURAL HISTORY

¶2.     S.M.[1] was born in April 1995 to Gail Morris in Chicago, Illinois. No father is named on S.M.'s birth certificate. In October 1995, the State of Illinois brought a paternity action to establish Porter as S.M.'s father. Due to inactivity in the case and other deficiencies, the case was dismissed on April 5, 2006. Sometime prior to December 2011, Porter moved to Jefferson County, Mississippi. Morris and S.M. remained in Chicago.

¶3.     In December 2011, the Illinois Department of Healthcare and Family Services (IDHFS) requested the Mississippi Department of Human Services (MDHS) to petition the Jefferson County Chancery Court to establish paternity of S.M. IDHFS requested that MDHS seek an order of ongoing child support and retroactive support. Porter submitted to genetic testing, which indicated a greater than 99.9% probability that Porter was S.M.'s father.

¶4.     On April 17, 2012, MDHS filed a petition for child support in the Jefferson County Chancery Court. A Mississippi Rule of Civil Procedure 81 summons and a complaint were served on Porter on April 30, 2012. Porter filed his answer and defenses on June 11, 2012. A hearing was initially scheduled for June 26, 2012, but was continued multiple times. On the scheduled October 23, 2012 hearing date, Porter's attorney moved to withdraw as counsel. The motion was granted, but no continuance was ordered. Process was lost. *See*

_____

[1] Initials are substituted for the child's name in accordance with section 6(A)(2) of Mississippi's Appellate E-Filing Administrative Procedures.

2

M.R.C.P. 81(d)(5).

¶5. MDHS refiled its complaint on April 6, 2015. A Rule 81 summons was issued for Porter to appear on June 23, 2015. Porter appeared on that date, and a judgment of paternity was entered. The June 23, 2015 judgment ordered Porter to pay $252 per month in child support until S.M. turned twenty-one—a total of ten months of child support—unless S.M. was emancipated before turning twenty-one. Specifically, the judgment states: "The Defendant is required to pay $252.00 beginning 7/1/2015 for the support of the minor child, and shall continue each month thereafter until the child reaches the age of 21, marries, or otherwise becomes emancipated." Porter moved to set aside the judgment, arguing that Illinois's age of majority (nineteen) applied, rather than Mississippi's age of majority (twenty-one), and that he had no obligation to support S.M. since she was no longer a minor under Illinois law. After a hearing, the chancellor agreed that Illinois's age of majority applied. On February 29, 2016, the chancellor ordered that the June 23, 2015 child-support order be set aside. Porter was not ordered to pay any support.

¶6. MDHS appeals, arguing that under the choice-of-law provisions of the UIFSA, the chancellor was required to apply Mississippi law, including Mississippi's twenty-one-year age of majority. Porter asserts the Jefferson County Chancery Court lacked jurisdiction over this matter entirely, and, alternatively, that the chancellor's decision applying Illinois's age of majority was correct.

## DISCUSSION

**I.      Whether the chancery court had subject-matter jurisdiction.**

¶7.     While Porter alternatively argues that the chancellor's decision should be affirmed, he first asserts the chancellor lacked subject-matter jurisdiction over MDHS's complaint. As Porter's argument regarding lack of subject-matter jurisdiction, if correct, would be dispositive of this appeal, we address it first.

¶8.     "Jurisdiction is a question of law, which [we] review de novo." *Derr Plantation Inc. v. Swarek*, 14 So. 3d 711, 715 (¶8) (Miss. 2009). "[T]he factual findings underpinning the jurisdiction question are reviewed under the familiar substantial-evidence and abuse-of-discretion standards." *Hamilton v. Young*, 213 So. 3d 69, 74 (¶11) (Miss. 2017). "A state court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 918 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction is not disputed, as Porter lived in Jefferson County and was served with process there. *Int'l Shoe*, 326 U.S. at 316. Rather, Porter challenges the chancery court's subject-matter jurisdiction. The issue of subject-matter jurisdiction can be raised at any time in the proceedings, even on appeal. *Pierce v. Pierce*, 132 So. 3d 553, 560 (¶14) (Miss. 2014).

¶9.     "To determine whether a court has subject[-]matter jurisdiction, we look to the face of the complaint, examining the nature of the controversy and the relief sought." *Ram-Kabir of America LLC v. S.C. Anderson Grp. Int'l*, 199 So. 3d 1240, 1241 (¶4) (Miss. 2016) (quoting *RAS Family Partners v. Onnam Biloxi LLC*, 968 So. 2d 926, 928 (¶11) (Miss. 2007)). "Jurisdiction is decided based on the existing facts at the time the action is

4

commenced." *Id.* (quoting *Bronk v. Hobson*, 152 So. 3d 1130, 1132 (¶3) (Miss. 2014)).

¶10.    When parties to a child-support action reside in different states, the jurisdictional provisions of UIFSA control.[2]  Deborah H. Bell, *Bell on Mississippi Family Law* § 18.08 (2005).  Both Mississippi and Illinois have adopted substantively identical forms of UIFSA. *See* Miss. Code Ann. §§ 93-25-101 to -903 (Supp. 2016);[3] 750 Ill. Comp. Stat. 22/100-22/999.  "The purpose of the UIFSA is to unify state laws governing the establishment, enforcement, and modification of child[-]support orders." *Gowdey v. Gowdey*, 825 So. 2d 67, 70 (¶11) (Miss. Ct. App. 2002) (citing 23 Am. Jur. 2d *Desertion & Nonsupport* § 73 (2002)).  "The UIFSA does not create a duty of support; it does, however, provide the procedural framework for enforcing one state's support order in another jurisdiction." *Id.* (citing *Thrift v. Thrift*, 760 So. 2d 732 (¶15) (Miss. 2000)).  It "was created to ensure the uniformity of decisions concerning the issue of child support." *Id.*

¶11.    UIFSA's purpose is explained in *Bell on Mississippi Family Law*, section 18.08, as follows:

---

[2] All states have enacted UIFSA, as its enactment "was [federally] mandated as a condition of state eligibility for the federal funding of child[-]support enforcement and . . . to continued receipt of subsidies for TANF (Temporary Assistance for Needy Families)." John J. Samson & Barry J. Brooks, *Integrating UIFSA (2008) with the Hague Conviction of 23 November 2007 on the International Recovery of Child Support and Other Forms of Family Maintenance*, 49 Fam. L.Q. 179, 187 (2015).

[3] Mississippi's current version of UIFSA was enacted during the 2015 Mississippi legislative session through Senate Bill 2301, Chapter 367.  UIFSA was first enacted in Mississippi in 1997 and codified in Mississippi Code Annotated sections 93-25-1 through -117.  Sections 93-25-1 through -117 were repealed and replaced by sections 93-25-101 through -903, effective July 1, 2015.  The provisions relevant to this matter are substantively the same under both versions.

[UIFSA] provides jurisdictional and procedural rules governing actions to recover spousal or child support. These rules apply whether support is sought in a suit for divorce, an independent action for child support, or a paternity action. The Act governs initial orders for support as well as petitions to modify support. UIFSA was designed to facilitate interstate establishment and enforcement of support and paternity orders. The Act creates a two-state procedure that allows a petitioner to proceed in another state by filing a petition in his or her home state. In addition, the Act sets out the procedure for registering an order in another state. To reduce interstate conflicts over modification jurisdiction, the Act creates a uniform system for modification, recognizing continuing exclusive jurisdiction in the issuing court while any party or child remains in the issuing state.

¶12. In applying UIFSA's provisions to this matter, we must first understand certain terms defined by its provisions. First, a "tribunal" under UIFSA is "a court, administrative agency or quasi-judicial entity authorized to establish, enforce or modify support orders or to determine parentage of a child." Miss. Code Ann. § 93-25-102(29). "The chancery courts, circuit and county courts, and tribal courts are the tribunals of this state." Miss. Code Ann. § 93-25-103(a). The "responding tribunal" is "the authorized tribunal in a responding state or foreign country." Miss. Code Ann. § 93-25-102(24). The "responding state" is the "state in which a complaint or comparable pleading for support or to determine parentage of a child is filed or to which a complaint or comparable pleading is forwarded for filing from another state or foreign country." Miss. Code Ann. § 93-25-102(23). The "issuing tribunal" is "the tribunal of a state or foreign country that issues a support order or a judgment determining parentage of a child." Miss. Code Ann. § 93-25-102(14). Here, IDHFS, Division of Child Support, contacted MDHS and requested that it file a complaint against Porter. Thus, Mississippi is the responding state, and the responding tribunal is the Jefferson County Chancery Court. The Jefferson County Chancery Court is also the issuing tribunal, as it was

6

the first to issue a support order or determination of paternity.

¶13. With the understanding that Mississippi is the responding state and the Jefferson County Chancery Court is the responding tribunal, we look to section 93-25-303 to determine whether the Jefferson County Chancery Court had subject-matter jurisdiction. Section 93-25-303 states that the "responding tribunal" has the authority to "exercise all powers and provide all remedies available" and "[d]etermine the duty of support and the amount payable[.]" On its face, the complaint sought an initial determination of child support, which is a subject matter encompassed by UIFSA. Thus, the chancery court was an appropriate tribunal under UIFSA, and the chancery court had subject-matter jurisdiction over this matter.

### 1. Lack of Prior Support Order

¶14. Porter argues that the Jefferson County Chancery Court cannot be a "responding tribunal" under section 93-25-303, because there is no "initiating tribunal" or enforceable support order issued by another state. An "initiating tribunal" is "the tribunal of a state or foreign country from which a complaint or comparable pleading is forwarded or in which a complaint or comparable pleading is filed for forwarding to another state or foreign country." Miss. Code Ann. § 93-25-102(11).

¶15. UIFSA does not require the existence of an initiating tribunal or registered support order to bring an action under its provisions. As stated by the National Conference of Commissioners on Uniform State Laws, which promulgated UIFSA, in the official comment to section 307(a): "The focus . . . is on providing services to a petitioner. Either the obligee or the obligor may request services, and that request may be in the context of the

*establishment of an initial child-support order . . . .*" (Emphasis added).[4]  Further, the

official comment to section 102, UIFSA's definition section, provides:

> The definitions in subsections (23) "responding state," and (24) "responding
> tribunal," accommodate the direct filing of a petition under UIFSA *without the*
> *intervention of an initiating tribunal.*  Both definitions acknowledge the
> possibility that there may be a responding state and a responding tribunal in a
> situation where there is *no initiating tribunal.*  Under current practice, the
> initial application for services most often will be generated by a support
> enforcement agency . . . and sent to the appropriate support enforcement
> agency in the responding state.

(Emphasis added).  Also, the official comment to section 301[5] states:

> Although the filing of a petition in an initiating tribunal to be forwarded to a
> responding tribunal is still recognized as an available procedure, the direct
> filing procedure has proven to be one of the most significant improvements in
> efficient interstate case management.  The promulgation and use of the
> federally mandated, or substantially conforming, forms, Section 311(b), further
> *serves to eliminate any role for the initiating tribunal.*

(Emphasis added).

¶16.    Section 93-25-401(a)(1) specifically provides for the establishment of an initial

support order by the responding tribunal.  This section states: "If a support order entitled to

recognition under this act has not been issued, a responding tribunal of this state with

---

[4] Mississippi's corresponding statutory enactment of section 307(a) states: "(a) In a
proceeding under this chapter, a support enforcement agency of this state, upon request[,]
. . . [s]hall provide services to a complainant residing in a state[.]"  Miss. Code Ann. § 93-
25-307(a)(1).

[5] Section 93-25-301(b) states:

> An individual complainant or a support enforcement agency may initiate a
> proceeding authorized under this chapter by filing a complaint in an initiating
> tribunal for forwarding to a responding tribunal or by filing a complaint or a
> comparable pleading directly in a tribunal of another state or a foreign country
> which has or can obtain personal jurisdiction over the defendant.

8

personal jurisdiction over the parties may issue a support order if . . . the individual seeking the order resides outside this state[.]" Further, section 93-25-402 provides for the determination of parentage in the responding tribunal: "A tribunal of this state authorized to determine parentage of a child may serve as a responding tribunal in a proceeding to determine parentage of a child brought under this act or a law or procedure substantially similar to this act." Section 93-25-305(b)(1) also gives a responding tribunal of this state the authority to "[e]stablish . . . a support order[.]" Thus, Porter's argument that there must be an order of support from an initiating tribunal in another state is without merit.

¶17. Porter also asserts the initial Illinois action was dismissed "with prejudice," which would preclude further action to establish child support, and that Illinois retains jurisdiction because the initial action was filed there. The record of the Illinois proceedings initiated in 1995 is not part of the record in this appeal. In support of the assertion that the 1995 case was dismissed with prejudice, Porter cites a June 1, 2012 letter from an Illinois attorney written to the MDHS attorney, which states that "[t]he case was ultimately dismissed 'with prejudice[.]'" The letter goes on to state that the dismissal "with prejudice," which means the case "cannot be reinstated and it cannot be re-filed," "as it applies to parentage and child[-]support cases[,] may be against the public policy of the State of Illinois[.]"

¶18. The letter stating the Illinois action was dismissed with prejudice is hearsay, and there is nothing in the record supporting the assertion that the case was dismissed with prejudice. The Cook County, Illinois Circuit Clerk's docket reflects that on April 5, 2006, the entire case was dismissed. It does not specify whether the dismissal was with or without prejudice.

9

The record indicates elsewhere that the dismissal was without prejudice. On a document filed in Illinois in August 2015, there is a handwritten note that states: "Respondent voluntarily withdraws his motion [for DNA testing filed 6/15/15,] since this case was dismissed without prejudice per 4/5/06 order." Regardless, Porter did not assert res judicata as an affirmative defense, and this issue is now procedurally barred. "[R]es judicata is an affirmative defense that may be waived." *Hinton v. Rolison*, 175 So. 3d 1252, 1258 (¶22) (Miss. 2015).

¶19. Further, Porter's assertion that Illinois retained continuing jurisdiction over the child-support action because the action was initially filed there is without merit. Porter is correct that "the issuing state [retains] continuing, exclusive jurisdiction until another state (registering state) acquires jurisdiction. The continuing, exclusive jurisdiction of the issuing state remains in effect as long as one of the parents or the child still resides in the issuing state, unless the parties agree to the contrary." *Hamilton*, 213 So. 3d at 75 (¶12) (quoting *Grumme v. Grumme*, 871 So. 2d 1288, 1290 (¶6) (Miss. 2004)); *see also* Miss. Code Ann. §§ 93-25-609 & -611(a)(2). However, no support order was issued in Illinois. Since no support order was issued in Illinois, there was nothing requiring any further action in Illinois, and the dismissal order did not convey jurisdiction on the Illinois court over any future requests for support. *See In re M.I.M.*, 370 S.W. 3d 94, 98 (Tex. App. 2012).[6] Also, because

---

[6] In *M.I.M.*, the appellant argued the 219th District Court in Collin County, Texas, lacked subject-matter jurisdiction because the child-support action had initially been filed in the 296th District Court of Collin County, Texas. *M.I.M.*, 370 S.W. 3d at 98. The initial proceeding in the 296th district was dismissed for want of prosecution, and a final support order was never pursued. *Id.* On appeal, the Texas Court of Appeals, Dallas, applied the provisions of the UIFSA and found that the "failure to pursue a final order in the [initial]

no judgment was entered in Illinois, there was no support order to register in Mississippi, and there was no need for consent of the parties to enforce the judgment in Mississippi. *See Hamilton*, 213 So. 3d at 75 (¶12); Miss. Code Ann. §§ 93-25-609 & -611(a)(2). Rather, since no prior support order had been entered prior to the Jefferson County Chancery Court's support order, the Jefferson County Chancery Court, as the first court to issue a support order, became the issuing tribunal, and Mississippi became the issuing state. Thus, jurisdiction to establish a support order was proper in Mississippi.

### 2. Lack of Payment of Public Assistance by Mississippi

¶20. Porter argues that MDHS must prove it provided public assistance to Morris or S.M. for it to bring a claim under UIFSA in Mississippi. Porter argues that because neither Morris nor S.M. lived in Mississippi, and that because no public assistance from the state of Mississippi had been paid, MDHS had no interest in this matter.[7]

¶21. Porter cites *Department of Healthcare & Family Services v. Arevalo*, 68 N.E.3d 552, 560 (¶23) (Ill. App. Ct. 2016) (citing *Department of Human Services v. Shelnut*, 772 So. 2d 1041 (Miss. 2000)), for the argument that because UIFSA creates no duty of support, "the

proceeding negate[d] the existence of continuing, exclusive jurisdiction in the [initial] [d]istrict [c]ourt." *Id.*

[7] MDHS's complaint filed on April 17, 2012, incorrectly stated that Morris and S.W. were Mississippi residents. However, this was corrected in MDHS's second complaint filed on April 6, 2015, which stated that Morris and S.W. were Illinois residents. While Porter argues MDHS filed the second complaint without leave, this issue was not raised below and is procedurally barred on appeal. It is undisputed that neither Morris nor S.W. have lived in Mississippi, nor is there any indication they have ever visited or received support from this state. The chancellor's June 23, 2015 order also incorrectly states that Morris is a resident of Jefferson County. The order setting aside the June 23 support order correctly states Morris and S.W. are Illinois residents.

only basis then for the creation or generation of a claim to be asserted by MDHS under the UIFSA is for it to show and prove that it provided public assistance" to Morris or S.M. However, *Arevalo* goes on to cite, correctly, the provision of UIFSA stating that since no support duty is created by UIFSA, courts must look to "the substantive and procedural law of the forum state" to determine whether a duty exists. *Id.* (citing 750 Ill. Comp. Stat. 22/303 (West 2014)).

¶22. Our law states that MDHS is authorized "[t]o accept applications for child[-]support[-]enforcement services to establish paternity, secure and collect support from any proper party or person as defined by Title IV-D of the federal Social Security Act notwithstanding the fact that the child or children do not currently receive or have never received public assistance." Miss. Code Ann. § 49-19-31(d) (Rev. 2012). It is undisputed that Morris fell under Title IV-D of the Social Security Act. Further, UIFSA requires MDHS to provide services to anyone residing in any state, who is entitled to support. Section 93-25-307(a)(1) states: "In a proceeding under this chapter, a support[-]enforcement agency of this state, upon request[,] . . . *[s]hall provide* services to a complainant residing in *a state* . . . ." (Emphasis added). Also, the unofficial annotation to section 203[8] provides that "[a]lthough the tribunal is empowered to initiate a request for a support order, it is almost always the case that it is the support[-]enforcement agency that initiates a proceeding to another state by sending the documents to the support[-]enforcement agency *in that state*." (Emphasis

---

[8] *See* Miss. Code Ann. § 93-25-203 ("Under this chapter, a tribunal of this state may serve as an initiating tribunal to forward proceedings to a tribunal of another state and as a responding tribunal for proceedings initiated in another state . . . .").

added).  As there was no requirement that Morris or S.M. reside in Mississippi or receive support from this state to convey jurisdiction in Mississippi, this issue is without merit.

## II.    Whether Mississippi's or Illinois's age of majority applies.

¶23.    Having established that jurisdiction was proper in the chancery court, we now determine whether Mississippi's or Illinois's age of majority applies under UIFSA.

¶24.    UIFSA contains the following choice-of-law provision:

> Except as otherwise provided in this chapter, a responding tribunal of this state shall:
>
> > (1) Apply the procedural and substantive law generally applicable to similar proceedings originating in this state and may exercise all powers and provide all remedies available in those proceedings; and
> >
> > (2) Determine the duty of support and the amount payable in accordance with the law and support guidelines of this state.

Miss. Code Ann. § 93-25-303.  The Jefferson County Chancery Court was the responding tribunal, as it was the authorized court in the responding state (Mississippi).  Section 93-25-303 is clear that the responding tribunal—the Jefferson County Chancery Court—is to determine child support "in accordance with the law . . . of *this state*."  (Emphasis added).  Thus, this state's law applies.

¶25.    Under Mississippi statutory law, a "minor" is "any person . . . under twenty-one years of age."  Miss. Code Ann. § 1-3-27 (Rev. 2014).  At the time of this action, S.W. was twenty years old—a minor under our law.  Mississippi Code Annotated section 93-11-65(8)(a) (Rev. 2013) states that unless otherwise ordered in the underlying child-support judgment, emancipation shall occur when the child (1) turns twenty-one, (2) marries, (3) joins the

13

military and serves on a full-time basis, or (4) is convicted of a felony and is sentenced to incarceration of two or more years for committing such felony. As set forth in section 93-11-65(8)(a), applicable Mississippi law provides that the duty to provide child support ends upon emancipation.

¶26. As jurisdiction was proper in the Jefferson County Chancery Court and Mississippi law applies, the duty of support did not terminate until S.M. reached twenty-one, unless S.M. was emancipated prior to turning twenty-one. Therefore, the chancellor erred in setting aside the initial child-support order, which required Porter to pay child support until S.M. reached twenty-one or was otherwise emancipated. The chancellor's final judgment setting aside the child-support award is reversed, and this matter is remanded for reinstatement of the chancellor's June 23, 2015 order applying Mississippi law.

¶27. **THE JUDGMENT OF THE JEFFERSON COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING, P.J., ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

14